UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PAUL NICHOLS,

       Plaintiff,

  v.

NANCY SIVILLI (in her official capacity), and ESSEX COUNTY SUPERIOR COURT,

       Defendants.

Civ.No. 2:14-3821 (WJM)

OPINION

**WILLIAM J. MARTINI, U.S.D.J.:**

      Pursuant to 42 U.S.C. § 1983 and the Declaratory Judgment Act, Bergen County Dispatch Reporter Paul Nichols brings this First Amendment challenge to a gag order issued by Essex County Superior Court Judge Nancy Sivilli. Before the Court is Defendants' motion to dismiss pursuant to FED.R.CIV.P 12(b)(1) and 12(b)(6). For the reasons set forth below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

I.    BACKGROUND

      Plaintiff Paul Nichols is a reporter for the Bergen County Dispatch (Second Amended Complaint "SAC" at ¶4) who brings a First Amendment challenge to a gag order (the "Gag Order") issued by Judge Nancy Sivilli in *Myronova v. Malhan*,[1] a divorce and custody suit pending in the family division of the Essex County Superior Court. Nichols wishes to interview one of the parties in *Myronova v. Malhan*, but is unable to because the Gag Order restrains all parties to the litigation from discussing any aspect of the divorce proceedings.

      In order to understand Nichols' First Amendment challenge, the Court first must provide a brief overview of the divorce proceedings that are the subject of the Gag Order. In 2011, a New Jersey court granted full child custody to Alina Myronova and stripped all

---

[1] Docket No. FM-07-1952-14.

custody rights from her husband, Surrender Malhan, after Myronova alleged that Malhan was an unfit parent. (SAC at ¶ 7). According to the SAC, the state court stripped Malhan of his custody rights on a mere two hours' notice without affording him an opportunity to refute Myronova's allegations. For example, the court prohibited Malhan from cross examining Myronova or presenting physical evidence – such as bank records or video recordings – that would further demonstrate his parental fitness. (SAC at ¶¶ 7-11). The SAC alleges that after the 2011 proceeding, Myronova retained sole custody of the children for sixteen months until she agreed to joint custody in June 2012; during that time, "Malhan was never granted a plenary hearing." (SAC at ¶ 14).

Malhan, along with five other parents, subsequently filed a class action lawsuit in this District that is currently pending before the Honorable Freda Wolfson: *Edelglass, et al., v. New Jersey*, et al., No. 3:14-cv-00760-FLW-DEA. The class action suit alleges that the New Jersey family court system fails to provide adequate due process rights to parents in child custody proceedings. (SAC at ¶ 15). In February 2014, a New Jersey affiliate of a major news broadcasting company interviewed Malhan and two other *Edelglass* plaintiffs regarding their experiences in family court and their allegations that the family court deprived them of their constitutional rights. (SAC at ¶ 16). In response, Myronova initiated proceedings against Malhan, which resulted in Judge Sivilli entering the Gag Order. (Def's Reply at 4). The Gag Order reads, in pertinent part:

> All parties are hereby enjoined and restrained without prejudice from speaking with, appearing for an interview, or otherwise discussing, the parties' marriage, their pending divorce, the within litigation, or the parties children or making any derogatory or negative statements about the other parties to any reporters, journalists, newscasters, or other agents/employees of newspapers or other media outlets on the grounds that it is not in the best interest of the children to have the parties' divorce litigation discussed in a public forum or to have public disparaging statements made about any party by the other party. (SAC Ex. A).

In addition to restricting their ability to discuss their divorce or related litigation with other individuals, the Gag Order also prohibits the parties from conveying such information on social media. The Gag Order also instructs Malhan to remove all divorce-related information from his blog. (*See Id.*)

In May 2014, Malhan filed for a temporary restraining order in *Edelglass* seeking to enjoin enforcement of the Gag Order. In a May 8, 2014 Order, Judge Wolfson expressed her view that the Gag Order "raises serious constitutional concerns" and that Judge Sivilli "failed to meaningfully weigh Plaintiff's First Amendment rights." She nonetheless denied Malhan's motion because the relief he sought was barred by the

2

*Rooker-Feldman* doctrine.  (*Edelglass*, ECF No. 11).  Malhan suffered another defeat when the Appellate Division of the Superior Court of New Jersey denied his application for an interlocutory appeal of the Gag Order.  (SAC at ¶ 23).

After Malhan failed to enjoin enforcement of the Gag Order, Nichols filed the instant action in this Court.[2]  Nichols wishes to interview Malhan about his experiences in family court, which according to Nichols, "are a matter of public interest."  (SAC at ¶ 31-32).  Nichols contends that that he is unable to interview Malhan because the Gag Order restricts Malhan from saying anything that relates to his divorce proceedings.  (SAC at ¶ 33).  The SAC alleges that Judge Sivilli entered the Gag Order without conducting any meaningful weighing of the First Amendment interests at stake.  According to Nichols, Judge Sivilli did not hold a plenary hearing and made no specific findings as to why a gag order was required in this particular case; instead, she issued the Gag Order "based on a generalized finding that publicity in family court is not in the best interests of children."  (SAC at ¶ 19.)

Plaintiff filed the SAC on August 7, 2014.  ECF No. 8.  It consists of the same allegations as the initial Complaint, but names Judge Sivilli and the Essex County Superior Court as Defendants.  *Id.*  Specifically, Nichols seeks (1) a declaratory judgment that the Gag Order is unconstitutional, and (2) an injunction prohibiting Defendants from enforcing the Gag Order.  *Id.* at 4.  Defendants now move to dismiss.  ECF. No. 13.

## II.    RULE 12(b)(1) MOTION TO DISMISS

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  There are two types of challenges to subject-matter jurisdiction: (1) facial attacks, which challenge the allegations of the complaint on their face; and (2) factual attacks, which challenge the existence of subject-matter jurisdiction, quite apart from any pleadings.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  In reviewing a facial attack, like the one in this case, the court must consider the allegations of the complaint in the light most

---

[2] Initially, Nichols filed his Complaint against the State of New Jersey, Judge Cynthia Floria, and Michelle M. S. Smith, Clerk of the Superior Court of New Jersey.  ECF No. 1.  Soon thereafter, he filed a motion requesting that this Court temporarily enjoin enforcement of the Gag Order.  ECF No. 3.  On July 23, 2014, the Court denied the motion for a temporary restraining order and dismissed Nichols' Complaint against Smith and Judge Floria with prejudice because those individuals had no "direct connection to or responsibility for the Gag Order issued by Judge Sivilli."  *Id.* (citing *Hussman v. Knauer*, No. 4-2776, 2005 WL 435231, at *6 (E.D.Pa. Feb. 23, 2005)).  The Court granted Nichols 30 days leave to amend his Complaint.  *Id.*

favorable to the plaintiff.  *Gould Electronics Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993).

    A.  Judge Sivilli

Defendants first argue that this Court lacks jurisdiction to hear Nichols' suit against Judge Sivilli because Nichols has failed to satisfy Article III's "case or controversy" requirement.  Pursuant to Article III of the United States Constitution, this Court's judicial power extends only to "cases or controversies."  U.S. CONST. art. III, § 2; *O'Shea v. Littleton*, 414 U.S. 488, 495 (3d Cir. 1974) (citing *Flast v. Cohen*, 392 U.S. 83, 94 (1968)). A case or controversy exists only where there is a dispute that is "definite and concrete, touching the legal relationships of the parties having adverse legal interests."  *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937).  Defendants argue that Nichols and Judge Sivilli do not possess the adverse legal interests needed to satisfy Article III's case or controversy requirements because Judge Sivilli entered the Gag Order as a "detached adjudicator" and therefore "has no interest in upholding [it]."  (MTD at 12).

Defendants rest their argument on a principle articulated in *In re Justices of the Supreme Court of Puerto Rico (In re Justices)*, 695 F.2d 17, 21-22 (1st Cir. 1982).  In *In re Justices*, Justices of the Puerto Rico Supreme Court were named as defendants in a lawsuit challenging the constitutionality of a legislatively enacted statute.  In dismissing the case against the Justices, the First Circuit held that a party who challenges a statute on constitutional grounds does not have adverse legal interests with judges who merely adjudicate claims under that statute; the theory being that judges in such a position "sit as arbiters without a personal or institutional stake on either side of the constitutional controversy."  695 F.2d at 21.  The court further reasoned that because judges typically have no role in the statute's enactment, they have no personal stake in the outcome of the constitutional challenge.  *Id*.  However, many courts, including the Third Circuit, have held that where judges have been given an enforcement role with respect to a particular statute, they can properly be named as defendants to a lawsuit challenging the statute.  *See, e.g., Georgevich v. Strauss*, 772 F.2d 1078, 1088 (3d Cir. 1985).  In those cases, judges are no longer neutral adjudicators— instead they are parties with adverse legal interests to the plaintiff bringing the constitutional challenge.

The Court finds that the present case is distinguishable from *In re Justices* and concludes that a case or controversy exists between Nichols and Judge Sivilli.  First, the *In re Justices* Court partially rested its conclusion on the fact that the Justices in that case were not responsible for enforcing the statute that was being challenged.  In contrast, New Jersey law empowers Judge Sivilli to enforce the Gag Order should the parties fail to comply with its terms.  *See* N.J. R. 1:10; *Board of Educ., Tp. Of Middletown tp. Educ. Ass'n*, 352 N.J. Super 501, 509-10 (N.J. Super. Ct. Ch. Div. 2001) ("The power of the court to enforce an order has neither been put in question…nor is it questionable.")  Because

Judge Sivilli is responsible for enforcing her Order, it cannot be said that her relationship to the Order is merely adjudicative.  *See In re Justices*, 695 F.2d at 22.

It is also significant that Judge Sivilli drafted the terms of the Gag Order.  As *In re Justices* and its progeny point out, judges will seldom have a personal stake in a constitutional challenge to a statute because they rarely have any role in the enactment of the statute.  The Gag Order in this case, however, is a product of Judge Sivilli's creation.  Judge Sivilli drafted the terms of the Gag Order and entered the Order so as to give it legal effect. (*See* SAC, Ex. A).  In fact, Judge Sivilli exercised her plenary power over the Gag Order by modifying its terms one month after she initially entered it.  (*See* SAC at ¶ 20).  These factors all support the conclusion that Judge Sivilli has adverse legal interests to a party who seeks to challenge the Gag Order.  Therefore, Nichols' suit against Judge Sivilli meets Article III's case or controversy requirement.[3]

    B.  Essex County Superior Court

Defendants contend that Nichols' suit against the Essex County Superior Court is barred by the Eleventh Amendment.  The Court agrees.  The doctrine of sovereign immunity – which derives from the Eleventh Amendment – operates as a jurisdictional bar that strips federal courts of subject matter jurisdiction over lawsuits against a state.  *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n. 2 (3d Cir. 1996) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984).  This jurisdictional bar extends to "arms" of the state, including some state agencies.  *Id.*  Moreover, § 1983 does not operate as a waiver to sovereign immunity.  *Smith v. State of New Jersey, et al.,* 908 F.Supp.2d 560, 563 (D.N.J. 2012).

The Superior Court of New Jersey and its Vicinages are arms of the state and therefore entitled to sovereign immunity.  Article VI of the New Jersey Constitution provides that "[t]he judicial power shall be vested in a Supreme Court, a Superior Court, and other Courts of limited jurisdiction…." N.J. Const., Art. VI, § I, ¶.  It is therefore widely understood that "[t]he judicial branch is an integral part of the state of New Jersey."

---

[3] Defendants cite no cases in which a court applied the *In re Justices* principle to a gag order.  To the contrary, federal courts bound by Article III's case or controversy requirement routinely hear challenges to gag orders that name judges as defendants.  *See e.g.*, *CBS Inc. v. Davis*, 510 U.S. 1315 (1994); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976); *FOCUS v. Allegheny Court of Common Pleas*, 75 F.3d 834 (3d Cir. 1995); *The News—Journal Corp. v. Foxman*, 939 F.2d 1499 (11th Cir. 1991); *WXYZ, Inc. v. Hand*, 658 F.2d 420 (6th Cir. 1980).  The plethora of challenges of this kind is telling because an Article III court must *sua sponte* dismiss a case that fails to meet the case or controversy requirement.  *See New Jersey Turnpike Auth. V. Jersey Central Power and Light,* 772 F.2d 25, 30 n. 10 (3d Cir. 1985).

*Johnson v. State of N.J.,* 869 F.Supp. 289, 295 (D.N.J.1994).  Nichols' arguments to the contrary are unavailing.  He invokes the *Ex Parte Young* doctrine as an exception to sovereign immunity; however that doctrine has no application against the states and their agencies.  *Puerto Rico Aqueduct & Sewer Auth. V. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).  Additionally, the fact that Nichols brings his suit under the Declaratory Judgment Act does not alter the conclusion that the Superior Court is entitled to sovereign immunity.  *See Progressive Consumers Fed. Credit Union v. United States*, 79 F.3d 1228, 1230 (1st Cir.1996) (Declaratory Judgment Act does not effect a waiver of sovereign immunity).  And while Nichols invokes the *Bivens* doctrine as a potential exception to sovereign immunity, it is well-settled that *Bivens* claims can only be brought against federal officials.  *Paton v. La Prade*, 524 F.2d 862, 870 (3d Cir. 1975).  The SAC as against the Superior Court of New Jersey is therefore **DISMISSED WITH PREJUDICE**.

## III.    Rule 12(b)(6) MOTION TO DISMISS

Having found that this Court has subject matter jurisdiction over Nichols' claim against Judge Sivilli, it must now consider whether Nichols has stated a claim upon which relief can be granted.  Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility."  *Id.*

Here, Defendants contend that the Gag Order is not a prior restraint and therefore passes constitutional muster because it is "reasonable."  They also argue that Nichols cannot sue Judge Sivilli for injunctive relief because he has failed to sufficiently allege that declaratory relief is unavailable.  The Court will address these arguments in turn.

A. The Constitutionality of the Gag Order

The motion to dismiss contends that the Gag Order is not a prior restraint and therefore must only be "reasonable," a standard that, according to Defendants, is easily met here. In contrast, Nichols argues that the Gag Order is a prior restraint subject to the most exacting form of judicial scrutiny.

Once a court determines that a restriction on speech is a prior restraint, there will be a heavy presumption against its constitutional validity. *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971). While the precise differences between a prior restraint and an ordinary restriction on speech are notoriously muddied, at the very least, prior restraints can be understood to "encompass[] injunctive systems which threaten or bar future speech based on some past infraction." *Alexander v. U.S.,* 509 U.S. 544, 576 (1993) (Kennedy, J., dissenting). The situation in this case, however, is less straightforward because the Gag Order does not impose any restrictions on Nichols; it restricts only the speech of Malhan, whom Nichols wishes to interview.[4] The Third Circuit is silent on whether a gag order imposed on a trial participant can operate as a prior restraint on the press. Other Circuits that have addressed the issue are in disagreement. *Compare In re Dow Jones & Co., Inc. (Dow Jones & Co.),* 842 F.2d 603 (2d Cir. 1988) (gag order on trial participant does not operate as a prior restraint on the press), *and Radio and Television News Assoc. of Southern California,* 781 F.2d 1443 (9th Cir. 1986) (same), *with Journal Publishing Co., v. E.L. Mechem,* 801 F.2d 1233 (10th Cir. 1986) (gag order on trial participant is a prior restraint on the press presumed to be constitutionality invalid), *and CBS Inc. v. Young,* 522 F.2d 234 (6th Cir. 1975) (same).

The Court need not choose which side of the split to follow because even assuming that the Gag Order is not a prior restraint on the press, Nichols has sufficiently pled that the Gag Order is not justified. *See Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920 (5th Cir. 1996) ("We need not decide whether the confidentiality order constitutes a prior restraint on the news agencies because, even assuming that the order is not a prior restraint, its effect on the news agencies' First Amendment rights must still be justified." (citing *Dow Jones & Co.*, 842 F.2d at 609)). The *Dow Jones & Co.* Court, which found that a similar gag order was not a prior restraint on the press, upheld the order only after concluding that it was justified. First, the court noted that the judge who issued the gag order examined specific circumstances unique to the case. For example, the judge found that press leaks attributable to the government revealed the identities and testimony of grand jury witnesses, which constituted a "shameful abuse of grand jury secrecy" that

---

[4] Even though Nichols is not the subject of the Gag Order, his inability to obtain information from Malhan meets Article III's injury-in fact-requirement. *FOCUS v. Allegheny Court of Common Pleas*, 75 F.3d 834, 838-840 (3d Cir. 1995)

jeopardized the Sixth Amendment rights of the criminal defendants.[5]  Moreover, the judge issuing the gag order "properly recognized [that] before entering an injunction against speech he had to explore whether other available remedies would effectively mitigate the prejudicial publicity."   *Dow Jones & Co.*, 842 F.2d at 609, 612 (citing *Nebraska Press*, 427 U.S. at 562).

According to the SAC, Judge Sivilli did not engage in this type of analysis before issuing the Gag Order.  The Gag Order – which is attached to the SAC – broadly prohibits Malhan from discussing any aspect of his divorce, including his experiences during child custody proceedings.  (SAC at ¶ 17).  The SAC alleges that despite its far-reaching scope, the Gag Order was issued "in a summary proceeding without any evidentiary hearing or any weighing of competing interests…."  (SAC at ¶ 26).  The SAC further alleges that Judge Sivilli made no specific findings regarding Mr. Malhan and his children with respect to the need for a gag order, and instead issued the Order "based on a generalized finding that publicity in family court is not in the best interests of children."  (SAC at ¶¶ 18, 26).  The Court therefore rejects Defendants' argument that Nichols has failed to adequately allege a First Amendment violation.

B.  Injunctive Relief

Nichols seeks an injunction that would prohibit enforcement of the Gag Order.  In 1996, Congress amended § 1983 to provide that "injunctive relief shall not be granted" in an action against "a judicial officer for an act or omission taken in such officer's judicial capacity…unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *Azubuko v. Royal*, 442 F.3d 302, 303-04 (3d Cir. 2006).  Therefore, Nichols is not entitled to injunctive relief unless declaratory relief is unavailable or inadequate.  *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194, 197 (3d Cir. 2000). Nichols – who has sued Judge Sivilli in her official capacity – has not alleged in the SAC that declaratory relief is unavailable or inadequate.  Consequently, his claim for injunctive relief is **DISMISSED WITHOUT PREJUDICE**.

---

[5] In support of their argument, Defendants only cite cases in which the First Amendment rights of the press clashed with Sixth Amendment rights of criminal defendants.  This case, however, involves a clash between the First Amendment and the "best interests of children."  The distinction is meaningful because while courts have held that First Amendment rights may need to yield to Sixth Amendment rights, *See Dow Jones & Co.*, 842 F.2d at 609, it is less clear that the same should occur when a First Amendment interest is in tension with a child's best interest.  *Cf. Troxel v. Granville*, 530 U.S. 57, 73 (2000) (suggesting that the best interest of a child cannot trump fundamental constitutional rights). *But see, Smith v. Daily Mail Pub. Co.,* 443 U.S. 97, 107 (1979) (Rehnquist, J., concurring) (recognizing that juvenile proceedings historically "have been conducted outside of the public's full gaze…[out of] concern for the welfare of the child….")

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.  An appropriate Order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: December 19, 2014**